IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 3 1 2005

Michael N. Milby, Clerk

| | | |
|---|---|---|
| ADMINISTAFF COMPANIES II, L.P. | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. |
| ALTOUR SERVICE, INC. and | ) | |
| ALTOUR INTERNATIONAL, INC. | ) | |
| Defendants. | ) | |

# H - 05   3062

## PLAINTIFF'S ORIGINAL COMPLAINT &
## REQUEST FOR DECLARATORY JUDGMENT

Plaintiff Administaff Companies II, L.P., ("Administaff") files this Original Complaint & Request for Declaratory Judgment, and would show as follows:

### A.    Parties

1.    Plaintiff Administaff Companies II, L.P. is a limited partnership organized under the laws of Delaware with its principal place of business in Kingwood, Texas.

2.    Defendant Altour Service, Inc. is a corporation organized under the laws of New York.  Altour Service, Inc. maintains its principal place of business in New York, NY and may be served through its registered agent for process, Alexander Chemla, Chairman and CEO, Altour Service, Inc., 718 Carman Avenue, Westbury, NY 11590.

3.    Defendant Altour International, Inc. is a corporation organized under the laws of New York.  Altour International, Inc. maintains its principal place of business in New York, NY and may be served through its registered agent for process, Joseph E. Alperin, Esq., 445 Park Avenue, New York, NY 10022.

1

## B.    Jurisdiction

4.      The Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 because Administaff and Altour International, Inc. and Altour Service, Inc. (collectively "Altour") are citizens of different states and the amount in controversy is in excess of $75,000.

## C.    Facts

5.      Administaff brings this claim for declaratory relief under Federal Rule of Civil Procedure 57, 28 U.S.C. §§ 2201, 2202, and Chapter 37 of the Texas Civil Practice & Remedies Code.

6.      Administaff provides professional employer services to companies throughout the United States, and provided such services to Altour.  Pursuant to a written contract, Administaff provides clients with specific human resource services, including payroll administration, employment administration, benefits administration, and others.

7.      The relationship between Altour and Administaff was short lived.  Altour and Administaff entered into a written Client Service Agreement effective March 1, 2002 (the "CSA").  The relationship was terminated on December 31, 2002.  The CSAs are attached hereto as Exhibits "A" & "B."

8.      On information and belief, Altour is in the business of providing limousine transportation services.  On or about March 18, 2005, Altour notified Administaff that Altour was the subject of complaints made by certain of Altour's current or former employees with the New York Department of Labor.  The thrust of the complaints was that Altour labeled certain charges on its invoices to its customers as "gratuities" but did not share those "gratuities" with its employee drivers.

2

9.     Once during the brief relationship, Altour asked Administaff a question about this practice.  On or about March 14, 2002, Administaff passed along a consultant's suggestion that these amounts should be labeled as "service charges," instead of "gratuities" on the invoices.  Administaff also passed along that Altour needed to inform the employees that they would not be receiving any portion of these charges.  Rather than heed the suggestion as to how to label the entries on the invoices, Altour ignored it and continued to use the term "gratuity."

10.     On or about February 11, 2005, the New York Department of Labor concluded that Altour's practice allegedly violated New York Labor Law, Section 196-d.  The Department enclosed a Recapitulation Sheet and demanded that Altour remit by March 3, 2005, a certified check in the amount of $252,100.52, to resolve the matter.  Altour declined to remit the check, and thus incurred interest at 16% and civil penalties of the unpaid monies allegedly owed.

11.     On or about August 22, 2005, the New York State Commissioner of Labor entered an Order to Comply against Altour Service, Inc. in the amount of $557,565.59 for tips owed to the complaining employees and including civil penalties and interest (the "Order").  A copy of the Order is included as part of Exhibit "C," attached hereto.  The awards imposed by the Order include unpaid gratuities for periods ranging from May 1, 1999 through December 30, 2004.  Again, Administaff's relationship with Altour was for a ten (10) month period during 2002.  Further, the majority of the employees to whom the New York State Commissioner of Labor determined gratuities allegedly were owed were not covered by the CSA, as they were never "co-employees" of Administaff and Altour.

3

12.     On or about August 29, 2005, Altour sent a letter to Administaff informing Administaff of the Order and alleging "Administaff is liable for this money, as well as Altour's costs, legal fees and other damages." *See* Exhibit "C."

13.     Administaff is not liable to Altour for the wages, interest, or civil penalty assessed against Altour in the Order or any of Altour's costs, legal fees or any other damages related to the Order for several reasons, including, but not limited to, the following:

    a.   Under section 3.2(d) of the CSA, Altour had the sole responsibility for complaince with the Fair Labor Standards Act and any similar state or local law, including Section 190.3 of the New York State Labor Law.

    b.   Under several provisions of section 10.3 of the CSA, Altour is required to indemnify Administaff for the type of award included in the Order.

    c.   Administaff received absolutely no financial benefit from Altour's alleged practice of charging its customers for a "gratuitity" but not passing the "gratuity" to its employee drivers. The Order purports to require Altour to pay these "gratuities" over to the employee and imposes interest and penalties. Under principles of equity, Adminsitaff cannot be held liable by Altour for the Order or its costs.

    d.   Under section 10.2 of the CSA, Altour expressly agreed that "Administaff shall under no circumstances be liable for any special, incidental or consequential damages of any nature whatsoever arising under this Agreement." Accordingly, to the extent that the relief

granted in the award constitutes special, incidental or consequetional damages arising from the CSA, the parties have agreed in writing that Administaff is not liable.

e.  Under section 13.2 of the CSA, Altour agreed "to comply, at its sole cost and expense, with any applicable specific directives promulgated by: (i) a federal, state, or local governmental body, department, or agency. . . ." The Order constitutes such a directive, and Altour thus must comply "at its sole cost and expense."

f.  The majority of the employees to whom the New York State Commissioner of Labor determined gratuities allegedly were owed were not covered by the CSA, as they were never "co-employees" of Administaff and Altour.  Further, of those that were co-employees, they can be classified as such only from March 1, 2002 through December 31, 2002, the date the CSA was terminated.

g.  Altour declined to pay $252,100.52 to the New York State Department of Labor by March 3, 2005, to resolve the matter, thus incurring interest at 16% and civil penalties which more than doubled the amount assessed against Altour in the Order.

### D.    Request for Declaratory Judgment

14.    Administaff hereby repeats and incorporates the allegations set forth in paragraphs 1 through 13.

15.    Administaff requests a declaration that Administaff is not liable to Altour for any amount of the $557,565.59 charged against Altour for violation of section 196 of

the New York State Labor Law Labor in the August 22, 2005 Order to Comply issued by the New York State Commissioner of Labor. Administaff further requests a declaration that Administaff is not liable to Altour for Altour's costs, legal fees or any other damages it has incurred, or may incur, in connection with the Order to Comply.

### E.   PRAYER

16.   For each of the foregoing reasons, Administaff asks for a judgment against Altour for the following:

(a)   A declaration that Administaff is not liable to Altour for any amount of the $557,565.59 charged against Altour for violation of section 196 of the New York State Labor Law Labor in the August 22, 2005 Order to Comply issued by the New York State Commissioner of Labor;

(b)   A declaration that Administaff is not liable to Altour for Altour's costs, legal fees or any other damages it has incurred, or may incur, in connection with the Order to Comply;

(c)   Attorney's fees and costs, as provided under the CSA, the Federal Rules of Civil Procedure, and Texas Civil Practice & Remedies § 37.009; and

(d)   Any and all additional relief to which the Court determines Administaff is entitled.

Respectfully submitted,

**GIBBS & BRUNS, L.L.P.**

By: _____
Barrett H. Reasoner
State Bar No. 16441980
1100 Louisiana, Suite 5300
Houston, Texas 77002

Telephone: (713) 650-8805
Telecopier: (713) 750-0903

**ATTORNEY IN CHARGE FOR
PLAINTIFF
ADMINISTAFF COMPANIES II, L.P.**

**Of Counsel:**

**Gibbs & Bruns, L.L.P.**
Caren Sweetland
State Bar No. 24001333
1100 Louisiana, Suite 5300
Houston, Texas 77002
Telephone: (713) 650-8805
Telecopier: (713) 750-0903





# CLIENT SERVICE AGREEMENT

THIS CLIENT SERVICE AGREEMENT (the "Agreement") is between Administaff Companies II, L.P., ("Administaff"), a Delaware corporation, with its principal place of business at 19001 Crescent Springs Drive, Kingwood, Texas 77339-3802, and Altour Services Inc. ("Client"). Administaff is a Professional Employer Organization, serving as an off-site, full service human resource department. Administaff personnel management services are delivered by entering into a co-employment relationship with Client's employees. This relationship and the sharing of responsibilities are defined in this Agreement.

## I. PERSONNEL

Administaff and Client agree that Administaff will provide personnel management services to Client and that Administaff and Client will be co-employers of the worksite employees assigned to Client's worksite ("Staff"), for the job functions listed in Schedule A ("Confidential Census"). Client warrants that information supplied to Administaff on the Confidential Census is accurate as supplied. Client agrees on an ongoing basis to amend Schedule A to reflect each change in pay rate, addition or deletion of Staff, or any change in their workers' compensation code within five (5) days of the effective date of such change or addition. If such information is inaccurate, Client shall promptly notify Administaff.

## II. TERM OF AGREEMENT

This Agreement shall commence on the date shown below and remain in force until either Administaff or Client terminates the Agreement by giving sixty (60) days prior written notice unless otherwise provided herein or as agreed to in writing by Client and Administaff.

## III. ADMINISTRATION

3.1   Administaff is responsible for the following:

    a.   reserving a right of direction and control over Staff, including a right to hire or terminate as to Administaff's employment relationship, maintain Staff records, and a right to resolve Staff disputes not subject to a collective bargaining agreement;

    b.   payment of salaries, wages, and compliance with applicable rules and regulations governing the reporting and payment of all federal and state taxes on payroll wages paid under this Agreement, including, but not limited to: (i) federal income tax withholding provisions of the Internal Revenue Code; (ii) provisions of state and/or local income tax withholding laws, if applicable; (iii) provisions of the Federal Insurance Contributions Act ("FICA"); (iv) provisions of the Federal Unemployment Tax Act ("FUTA"); and, (v) provisions of applicable state unemployment tax laws;

    c.   providing employee benefits through Administaff sponsored plans as indicated on Schedule B, if any are to be provided, compliance with the Consolidated Omnibus Budget Reconciliation Act ("COBRA") (excluding any state health or other benefit coverage continuation or conversion), Health Insurance Portability and Accountability Act ("HIPAA"), and Employee Retirement Income Security Act ("ERISA"), if applicable, as to plans sponsored by Administaff;

    d.   procurement of workers' compensation insurance and administration of claims;

    e.   development and implementation of policies and practices in conjunction with Client relating to personnel management services, including, but not limited to, enrolling, recruiting, interviewing, testing, selecting, training, evaluating, replacing, supervising, disciplining, reassigning, and terminating Staff; and

    f.   compliance with any applicable state statute or regulations governing a professional employer organization.

3.2   Client is responsible for the following:

    a.   the service provided or product produced by Client;

    b.   retaining a right of direction and control over Staff including a right to hire or terminate as to Client's employment relationship, as is necessary to conduct Client's business and without which Client would be unable to conduct its business, discharge any fiduciary responsibility that it may have, or comply with any applicable licensure, regulatory or statutory requirement of Client and/or Staff;

    c.   compliance with any professional licensing, fidelity bonding, and/or professional liability insurance requirements;

    d.   compliance with Occupational Safety and Health Administration ("OSHA") regulations, Environmental Protection Agency ("EPA") regulations, child labor laws, Worker Adjustment and Retraining Notification Act ("WARN"), Fair Labor Standards Act ("FLSA"), including Equal Pay Act, compliance with federal governmental contracting provisions, and any state and/or local equivalent of any of the foregoing; and any applicable state health or other benefit coverage continuation and conversion laws;

    e.   compliance with National Labor Relations Act ("NLRA") and liability for all obligations, including organizing efforts and process expenses, related to Client's collective bargaining agreement and any benefits arising from such agreement;

Copyright 2001, Administaff Companies II, L.P.

10133–GN–L.P. (Rev. 091901) CF

  f.  the operation of Client's business, equipment or property, including motor vehicles;

  g.  the payment, through Administaff, of commissions, bonuses, paid leaves of absence, and severance payments to Staff, if any;

  h.  the payment of any non-qualified deferred compensation or equity based compensation of any type, including, but not limited to, stock options, restricted stock and phantom stock, the number and value of options granted, whether such payment is actual or imputed for taxing purposes, and compliance with any applicable rules and regulations governing such compensation;

  i.  development and implementation of policies and practices to establish and maintain Client's intellectual property rights including but not limited to patents, trademarks, copyrights, trade secrets and confidential information and to prevent any infringement or unauthorized use of Client's intellectual property rights by any third party;

  j.  development and implementation of policies and practices to avoid infringement or unauthorized use by Staff and/or Client of any intellectual property rights; and

  k.  to the extent Client deems appropriate, entering into agreements with Staff concerning assignment of inventions and copyrights to Client and protection of Client's intellectual property rights.

3.3 Administaff and Client will be jointly responsible for compliance with all federal, state and local employment laws, including, but not limited to, Title VII of the 1964 Civil Rights Act, Age Discrimination in Employment Act ("ADEA"), Title I of the Americans with Disabilities Act ("ADA"), Family and Medical Leave Act ("FMLA"), Consumer Credit Protection Act, Title III, 42 U.S.C. §§ 1981, §§ 503 of the Rehabilitation Act of 1973, immigration laws and regulations, and any state and/or local equivalent of the foregoing, as well as any and all personnel management policies and procedures that are maintained by Administaff and referenced in 3.1 e.

## IV. SUPERVISION AND EMPLOYMENT AGREEMENT

4.1 One or more on-site supervisors shall be designated by Administaff from among Staff. On-site supervisors shall be responsible for facilitating personnel management services provided by Administaff.

4.2 An employee listed on Schedule A, and any Staff added later, become co-employees of Administaff when (i)he/she becomes an employee of Client; (ii) he/she executes an Administaff Employment Agreement as set forth in Exhibit C ("Employment Agreement"); and (iii) Client pays the first Administaff invoice covering such employee.

## V. WORK ENVIRONMENT

5.1 Client agrees that it will comply, at its sole cost and expense, with all applicable federal, state and local health and safety laws, regulations, ordinances, directives and rules relating to workplace, provide and ensure use of all personal protective equipment, and follow all directives concerning a safe work environment from Administaff's workers' compensation insurance carrier.

5.2 Client agrees to immediately report to Administaff all accidents and injuries involving Staff.

5.3 Administaff and Administaff's workers' compensation insurance carrier shall have the right to inspect Client's workplace, including, but not limited to, any job sites at which Staff work. To the extent possible, such inspections shall be scheduled at mutually convenient times.

## VI. INSURANCE

6.1 Administaff shall, at its expense, keep in force at all times during this Agreement, workers' compensation insurance covering all Staff. Client shall be named an alternate employer. Upon written request by Client, Administaff shall request that its insurance carrier furnish a certificate of insurance verifying coverage. The policy shall include a waiver of subrogation.

6.2 a. Administaff shall provide coverage for Client under the Administaff Employment Practices Liability Insurance Policy, provided:

  (i)  Client provides Administaff notice immediately but in no event more than three (3) days of its receipt of any charge, litigation, request for arbitration, or demand letter involving Staff, former Staff or an applicant;

  (ii)  Client is not in default hereunder; and

  (iii)  Client complies with the requirements set forth at paragraph 11.8 and 11.11 and 13.2 of this Agreement.

  (b)  The Administaff EPLI policy provides for a $10,000 deductible, including attorneys' fees, to be paid by the Client with a maximum aggregate coverage limit of $1,000,000 for the Client. Coverage includes reasonable and necessary attorneys' fees which attorneys will be selected by Administaff. The policy will be excess coverage in the event Client maintains its own EPLI policy. The notice specified above shall be sent by facsimile transmission to 281/348-3118 Attn: Human Resource Compliance with the original document following via overnight courier to the address shown in paragraph 13.8.

  (c)  The EPLI coverage terminates with the termination of this Agreement.

  (d)  This paragraph 6.2 is subject to the terms and conditions set forth in the policies.

Copyright 2001, Administaff Companies II, L.P.  10133–GN– L.P. (Rev. 091901) CF

6.3   Client warrants and represents to Administaff that it has in force at the effective date of this Agreement, and will maintain during this Agreement, the following insurance coverage and minimum limits. Such coverage shall be provided at the Client's sole cost and expense and shall be provided by a state approved insurance company and rated by A M Best Company at A- or better.

    a.   General Liability.  Commercial General Liability in standard form on an "occurrence basis" covering Client's operations with minimum limits of:

|     |     |     |
| --- | --- | --- |
| (1) | $2,000,000.00 | General Aggregate |
| (2) | $1,000,000.00 | Products/Completed Operations Aggregate and/or Error and Omissions (Malpractice) |
| (3) | $1,000,000.00 | Personal and Advertising Injury |
| (4) | $1,000,000.00 | Each Occurrence. |

Additional coverage may be required for special operations.

    b.   Automobile Liability.  Comprehensive automobile liability insurance covering all owned, hired, and non-owned Client vehicles, with minimum limits of One Million and No/100 Dollars ($1,000,000) combined single limit per occurrence for Bodily Injury and Property Damage Liability. Client warrants that all persons operating Client's vehicles are duly licensed and covered under the Client's Automobile Liability insurance policy without exception.  Client agrees to furnish to Administaff a list of drivers upon request.  The policy shall be endorsed to include, at no additional cost to Administaff, Staff who shall be operating motor vehicles for Client.

6.4   Policy Requirements.  All Client insurance policies required herein shall provide for thirty (30) days written notice to Administaff prior to alteration, cancellation, non-renewal or material change by endorsement of the coverage.  All such insurance policies shall be endorsed to waive any and all rights of subrogation against Administaff and name Administaff as an additional insured, both at no additional cost or expense to Administaff. Each of the policies shall be primary insurance and not excess over or contributory with any other valid, existing and applicable insurance carried by Administaff.

6.5   Client shall submit certificates of insurance to Administaff signed by authorized representatives of insurance companies evidencing all insurance required pursuant to this Article VI within thirty (30) days of execution of this Agreement and at any renewal or replacement of such policies.

6.6   Waiver of Subrogation.  Each party to this Agreement hereby waives any claim in its favor against the other party by way of subrogation or otherwise, which arises during this Agreement, for any and all liability, loss or damage which is covered by policies of insurance required hereunder or covering property, to the extent that such liability, loss or damage is recovered under such policies of insurance.  Since the mutual waivers will preclude the assignment of any aforesaid claim by way of subrogation or otherwise to an insurance company or any other person, each party agrees to immediately give to each of its insurance carriers, written notice of the terms of said mutual waiver, and to have its insurance policies properly endorsed, if necessary, to prevent the invalidation of said insurance coverage by reason of said waiver.

## VII.  ENROLLMENT FEE

Client agrees to pay Administaff a non-refundable enrollment fee in the sum specified in the initial Schedule B ("Client Service Application").  This one time enrollment fee is due and payable at the time the initial Agreement is signed by Client.

## VIII.  SERVICE FEE

In exchange for the personnel management services provided by Administaff, Administaff and Client agree as follows:

8.1   The Administaff fee rate percentages set forth in Schedule B are calculated utilizing the data submitted by the Client in Schedule A.  If such information is inaccurate, Client shall amend Schedule A to reflect the current information.

8.2   The initial Schedule B will be signed by the parties and shall set forth the fee to be charged by Administaff.  Each pay period, Client shall pay Administaff the total service fee ("Total Service Fee") comprised of the actual gross payroll of Staff during such pay period plus the fee rate percentages specified in Schedule B multiplied by the actual gross payroll of Staff during such pay period.  The Total Service Fee plus any other charges shall be reflected on the invoice.

8.3   Administaff may periodically review the total Schedule B payroll amount and may, upon written notice to Client, adjust its fee percentages to account for material changes, as determined by Administaff, in payroll amount either increasing or decreasing its fee rate, which change will be effective with the next invoice after the notice.  Changes to the fee percentages made necessary due to statutory changes which would have been applicable to Client absent this Agreement may be made at any time such changes are required by law.

8.4   Each payroll period, Client shall provide a written report to Administaff of all time worked by non-exempt Staff, days worked by exempt-salaried Staff, and commissioned Staff.  Client will accurately report FLSA classification of all Staff, pay rate and any overtime worked by non-exempt.

8.5   An invoice provided by this Agreement shall be due and payable by Client on its receipt.  Client shall use a method of payment approved in advance by Administaff.

Copyright 2001, Administaff Companies II, L.P.                                  10133–GN–L.P. (Rev. 091901) CF

8.6 Client shall reimburse Administaff for services not included in its service fee and requested by Client. Administaff shall advise Client if requested services are an extra charge.

8.7 Fee rate percent for Staff not listed on the initial Schedule A, shall be computed using the same pricing model ("Pricing Model") used to determine the fee on the initial Schedule B. This Pricing Model shall be applied to the actual payroll of Staff not included on the initial Schedule A, benefits selections and applicable payroll taxes. The Pricing Model will take into account the number of months remaining in the current Agreement year. Each subsequent year Schedule A shall be updated to include all current Staff and shall become the new Schedule A for purposes of determining additions to Staff that are not on the schedule.

8.8 Administaff reserves the right to impose any terms of its credit policy.

8.9 Client will notify Administaff of any changes, errors or inaccuracies in any payroll, payroll report, Schedule A or Schedule B within ten (10) days of such error or change.

## IX. DEFAULT

9.1 Acts of default by Client are:

    a.    failure of Client to pay an invoice when due;

    b.    failure of Client to comply with any directive of Administaff, when such directive is promulgated or made necessary by: (i) a federal, state or local governmental law or regulation; (ii) an insurance carrier providing coverage to Administaff and/or its Staff; or (iii) specific circumstances which may affect the safety or violate the legal rights of Administaff or Staff;

    c.    direct payment of taxable wages by Client to Staff for services contemplated by this Agreement;

    d.    commission or omission of any act that usurps any material right or obligation of Administaff as a co-employer of Staff covered by this Agreement;

    e.    violation by Client of any material provision of this Agreement;

    f.    filing by or against Client for bankruptcy, reorganization or appointment of a receiver, supervisor, or liquidator over its assets or property, Client's failure to meet any of its financial covenants, or Administaff's reasonable belief Client is insolvent;

    g.    failure to follow terms of Administaff's credit policy as stated in paragraph 8.8 after being given written notice of the failure and ten (10) days opportunity to cure;

    h.    failure to cooperate with Administaff in its fulfilling any of its obligations under this Agreement after being given notice of the failure to cooperate and ten (10) days opportunity to cure;

    i.    a material money judgment against Client which remains unsatisfied for more than thirty (30) days and has not been appealed; or

    j.    making any form of press release or announcement to the general public regarding this Agreement, without the prior express written consent of Administaff, publicizing Administaff or using its trade marks, and/or service marks, or otherwise disclosing to the general public that the parties have entered this Agreement or have a relationship.

9.2 In the event Administaff incurs any expenses, fines and/or liabilities as a result of an act of default by Client as set forth above, Client shall reimburse Administaff for all actual expenses, fines and/or liabilities, including, but not limited to, reasonable attorneys' fees, court costs and any related expenses.

9.3 Upon an act of default by Client, Administaff shall have the option, in its sole and absolute discretion, of terminating this Agreement immediately in the case of a default under 9.1a, b, c, d, e, f, or i or after cure period provided in 9.1 g, h, and i by written facsimile transmission or any other method of communication to the address stated in paragraph 13.8.

## X. INDEMNITY

10.1 Administaff hereby agrees to indemnify, defend and hold Client harmless from and against any and all liability, expense (including cost of investigation, court costs and reasonable attorneys' fees) and claims for damage of any nature whatsoever, whether known or unknown and whether direct or indirect, as though expressly set forth and described herein which Client may incur, suffer, become liable for, or which may be asserted or claimed against Client as a result of Administaff failing to pay when due wages to Staff, federal, state and local payroll taxes, if any, and health insurance premiums for participating Staff or to secure workers' compensation insurance coverage for Staff after having its invoice paid by Client.

10.2 Notwithstanding anything herein or in any other agreement or document to the contrary, Client expressly agrees that Administaff shall under no circumstances be liable for any special, incidental or consequential damages of any nature whatsoever arising under or relating to this Agreement.

Copyright 2001, Administaff Companies II, L.P.        10133–GN– L.P. (Rev. 091901) CF

10.3 Client hereby agrees to indemnify, defend and hold Administaff, Administaff, Inc. and all subsidiaries of or companies affiliated with Administaff, Inc., its and their current and/or former officers, directors, shareholders, employees and agents ("Administaff Indemnified Parties"), harmless from and against any and all liability, expense (including cost of investigation, court costs and reasonable attorneys' fees) and claims for damage of any nature whatsoever, whether known or unknown and whether direct or indirect, as though expressly set forth and described herein, which Administaff Indemnified Parties may incur, suffer, become liable for or which may be asserted or claimed against Administaff Indemnified Parties:

    a.  relating to any claims, incidents or causes of action that occurred prior to the effective date of this Agreement, regardless of whether the claims, incidents or causes of action were asserted prior to or after the effective date of this Agreement;

    b.  as a result of the failure of Client to follow the directives, procedures and policies of Administaff as they relate to Staff which includes, but is not limited to, claims arising from the acts or failures to act of the Client and/or its employees, agents, former employees or former agents in accordance with (i) applicable federal, state or local laws or (ii) the terms and conditions of this Agreement;

    c.  arising from the Client's actions toward the Staff, rights or terms and conditions of employment, whether based on contract, tort or statutory violation (including but not limited to violations under FLSA, OSHA or WARN) subject to coverage under EPLI coverage under 6.2 herein, if any;

    d.  arising from actions of Staff toward non-employees of Administaff whether based on contract, tort or statutory violation;

    e.  arising from any product produced and/or services provided by Client;

    f.  arising from operation by Client, Client's employees or Staff of any form or type of motor vehicle;

    g.  arising from employee or Staff unionization and/or provision of benefits to any Staff member covered by a collective bargaining agreement, any organizing activity or claims based on NLRA;

    h.  arising from any Client employment agreement or offer letter Client has with Staff, or any policy or plan Client has regarding paid time off or other payments plans such as vacation, sick leave, severance, bonus or commissions and nothing in this provision creates any such policy or plan;

    i.  arising from any infringement, alleged infringement, unauthorized use or alleged unauthorized use of any intellectual property rights, including but not limited to patents, trademarks, copyrights, trade secrets and confidential information, by Staff or Client and by any product or services provided by Client; and

    j.  as a result of the failure of Client to properly maintain and operate any separate employee benefit plan(s), including, but not limited to, a defined contribution or defined benefit pension plan or a welfare plan maintained by Client in accordance with all applicable federal and state laws and any accompanying regulatory guidance thereto, including, but not limited to, Client or Client's agents' failure with respect to such plan(s) to make timely deposits to the appropriate plan(s) in an amount equal to the Staff requested wage deferral, to perform proper discrimination and coverage testing, file required annual informational or event specific returns or reports with the appropriate regulatory agencies, and timely pay any applicable premiums or vendor fees.

10.4 The indemnities in this section shall be deemed to be contractual in nature and shall survive termination of this Agreement.

## XI.  REPRESENTATIONS, WARRANTIES, AND AGREEMENT

11.1 Client agrees not to engage in any conduct that is, or could be in any way, inconsistent with the policies and procedures of Administaff made known to Client or the fact that the Staff are the co-employees of Administaff and Client. Client further agrees that it will not engage in any conduct regarding the Staff that is expressly disapproved of by Administaff.

11.2 Client agrees that Administaff will have no responsibility or liability for any losses or claims that arise as a result of Staff's negligence, theft, embezzlement, or other unlawful or willful acts committed by Staff.

11.3 Client agrees to comply with all applicable Department of Transportation, Interstate Commerce Commission and Motor Carrier Act requirements and regulations if Client uses Staff to operate motor vehicles and agrees to indemnify, defend, and hold Administaff harmless from and against any liability, expense (including court costs and attorneys' fees) and claims relating to the non-compliance or violation. This obligation to indemnify Administaff shall survive termination of this Agreement.

11.4  Client agrees to provide Administaff with a copy of any notice, complaint or charge of a government agency and/or legal action concerning (i) Client's workplace; (ii) Client's compliance with any laws, rules, regulations or ordinances relating to the workplace; or, (iii) any Staff within three (3) days of receipt of such notice, complaint, charge or legal action via facsimile transmission to 281/348-3118 ATTN: Human  Resource Compliance, with the original complaint sent overnight courier to the address shown in paragraph 13.8.

Copyright 2001, Administaff Companies II, L.P.

10133–GN–L.P. (Rev. 091901) CF

11.5 Client agrees to notify Administaff in advance if it has executed a collective bargaining agreement, is in the process of negotiating a collective bargaining agreement, experiencing organizing activities, or has any employees represented by a union.

11.6 Client acknowledges that any and all employee benefit plans maintained by Administaff may be amended at any time at the sole discretion of Administaff modifying any provision thereof to the extent allowed by ERISA and the Internal Revenue Code. Such modifications include but are not limited to, increases or decreases of participant co-pays, deductibles, out of pocket maximums, covered services, employee contribution amounts and the like and such modifications shall not be restricted as a result of any provision(s) contained in a collective bargaining agreement entered into by Client.

11.7 In the event co-employer (Client) files a voluntary petition under Title 11 of the United States Code, or in the event that an involuntary petition is filed against co-employer (Client) under Title 11, all debts that the Client may owe to Administaff shall be considered "administrative expenses" within the meaning of 11 U.S.C. §§ 503 (b)(1)(A) and Administaff's claim or claims for such administrative expenses shall be entitled to the priority specified in 11 U.S.C. §§ 507 (a) (1). Client further agrees to use every effort and cooperate with actions which will so classify these claims as administrative.

11.8 Client agrees to cooperate fully with Administaff in any investigation including, but not limited to, the defense of any employment claim, involving Staff whether such investigation or claim is initiated by Staff, a government agency or by Administaff. Administaff will not provide a defense in those situations where Client has taken action against Staff or individual members without the prior consultation of Administaff or where Client has failed to follow Administaff's directives which are based on applicable laws, rules or regulations.

11.9 Client warrants and represents that all individuals it has represented to Administaff as Staff are: (i) its employees, and (ii) included in the personnel management services of Administaff including receiving wages and coverage under insurance and benefit plans.

11.10 Client warrants and represents to Administaff that, prior to entering into this Agreement, Client has informed Administaff of all compensation, pension and/or benefit plans that Client may currently provide, or has heretofore provided, for any owners, partners, shareholders, directors, officers, employees or agents of Client. Client acknowledges that if Client currently provides or has previously provided any pension or benefit plans to such individuals or their dependents, certain complex rules under ERISA and the Internal Revenue Code may apply to these plans, as well as to any plans maintained by Administaff, as a result of this Agreement. If Client currently maintains or has maintained any such plans, Client acknowledges that Administaff has advised Client to seek advice from a qualified professional regarding the effect of this Agreement on such plans.

11.11 Client warrants and represents to Administaff that prior to entering into the Agreement, it has not engaged to the best of its knowledge in any violations of federal, state or local laws or regulations regarding wage and hour, unfair labor practices or discrimination and that Client is current on the payment of all wages, payroll taxes, and workers' compensation assessments and penalties, if applicable.

11.12 Client acknowledges that at the time of termination of this Agreement, Administaff will send Staff employment termination notices terminating Administaff's relationship with Staff which does not affect the employment relationship Client has with Staff.

11.13 Upon termination of this Agreement, Client will assume sole responsibility and liability for all accumulated unpaid sick leave, paid time off, vacation or similar liabilities for Staff.

11.14 Client agrees to notify Administaff in advance if it owns or operates aircraft or watercraft, or has any foreign operations or expatriates.

11.15 Client warrants and represents that it has furnished to Administaff accurate information concerning the Client's ownership structure for purposes of determining 401(k) plan eligibility or participation level. Client must promptly notify Administaff of any changes in its ownership structure.

11.16 Client warrants it will not request Staff to perform any services outside that person's workers' compensation code or employee's ability or training if such service would endanger the individual, Staff or other persons to personal harm or danger.

11.17 Client agrees that it will not during this Agreement and for a period of one (1) year following its termination, solicit or hire any corporate employee of Administaff or in any way induce an Administaff employee to terminate his/her employment. If Client does employ for itself, or for its benefit, any corporate employee of Administaff, it will pay within thirty (30) days of written notice from Administaff a recruiting fee equal to one hundred and fifty percent (150%), or the maximum allowed under state law, of the annualized salary of the employee. Annualized salary for this paragraph 11.17 shall include any signing bonus, salary and wages and any estimated commission which will/would be paid to the employee during his/her first twelve (12) months of employment with or for the benefit of Client.

11.18 Client understands that certain services will be provided by Administaff through the use of Administaff's affiliates' password-protected Internet service platform *Administaff Assistant*. These services now include or will in the future include payroll, benefits information, reporting to Client and Staff information, recruiting, and training. Administaff may communicate services or offerings or make certain information available to Staff or Client through bizzport or *Administaff Assistant*. *Administaff Assistant*, bizzport and any other Administaff website are governed by the Terms of Use and Privacy Policy contained on each website.

## XII. ARBITRATION

12.1 Except for unpaid invoices or any amount of money owed by Client to Administaff or by Administaff to Client, Administaff and Client agree and stipulate that all claims, disputes and other matters in question between Administaff and Client arising out of, or relating to this Agreement or the

Copyright 2001, Administaff Companies II, L.P. 10133–GN– L.P. (Rev. 091901) CF

breach thereof, will be decided by arbitration in accordance with the Federal Arbitration Act (9 U.S.C. §§ 10 and 11) and the Commercial Arbitration Rules of the American Arbitration Association subject to the limitations of this Article XII. This agreement to so arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith as provided in this Article XII. will be specifically enforceable under the prevailing law of any court having jurisdiction.

12.2 Notice of the demand for arbitration will be filed in writing with the other party to the Agreement and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall any such demand be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

12.3 No arbitration arising out of, or relating to, this Agreement shall include by consolidation, joinder or in any other manner any other person or entity who is not a party to this contract unless:

    a.    the inclusion of such other person or entity is necessary if complete relief is to be afforded among those who are already parties to the arbitration, and/or such other person or entity is substantially involved in a question of law or fact which is common to those who are already parties to the arbitration and which will arise in such proceedings; and,

    b.    the written consents of the other person or entity sought to be included and Administaff and Client have been obtained for such inclusion, which consent shall make specific reference to this paragraph 12.3; but no such consent shall constitute consent to arbitration of any dispute not specifically described in such consent or to arbitration with any party not specifically identified in such consent.

12.4 The award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof, and will not be subject to modification or appeal except to the extent permitted by §§ 10 and 11 of the Federal Arbitration Act (9 U.S.C. §§ 10 and 11).

## XIII. MISCELLANEOUS

13.1 This Agreement is between Administaff and Client and creates no individual rights of Staff or any third parties (except as stated in Article X.), as against Client or Administaff.

13.2 Client agrees to comply, at its sole cost and expense, with any applicable specific directives promulgated by: (i) a federal, state or local governmental body, department or agency and/or (ii) an insurance carrier providing coverage to Administaff and/or Staff affecting this Agreement.

13.3 Client shall not assign this Agreement or its rights and duties hereunder, or any interest herein, without the prior written consent of Administaff, which consent will not be unreasonably withheld.

13.4 The prevailing party, in any enforcement action arising with respect to this Agreement, shall be entitled to recover from the other party all costs of such enforcement action including, without limitation, reasonable attorneys' fees, court costs and related expenses.

13.5 EXCEPT FOR ARTICLE XIII. OF THIS AGREEMENT, WHICH SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. §§ 10 AND 11), THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REFERENCE TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF.

13.6 This instrument, including the initial Schedules and Exhibits attached hereto, contains the entire Agreement of the parties and supersedes all prior and contemporaneous agreements or understandings, whether written or oral, with respect to the subject matter hereof. No amendment or modification to this Agreement, other than subsequent Schedule B, shall be valid unless in writing and signed by both parties hereto. This Agreement is binding on the parties as of the last date it is signed by the parties if the execution dates are different.

13.7 If any provision of this Agreement, or any amendment thereof, is determined by a court of competent jurisdiction to be invalid the remaining provision shall remain in effect and be so construed as to effectuate the intent and purposes of this Agreement and any amendments thereto.

13.8 All notices, requests and communications provided hereunder and required by Client shall be in writing, sent by facsimile, or hand-delivered, or mailed by prepaid United States registered, certified, or express mail, return receipt requested, or overnight courier service and addressed to the party's principal place of business as set forth in this Agreement (or to such other address provided in writing by such party).

    If to Administaff:

    Administaff Companies II, L.P.
    19001 Crescent Springs Drive
    Kingwood, Texas  7339-3802
    Attn: John H. Spurgin, II
    Fax: (281) 358-6492

13.9 The waiver by either party hereto of a breach of any term or provision of this Agreement shall not operate or be construed as a waiver of a subsequent breach of the same provision or of a breach of any other term or provision of this Agreement by any party.

Copyright 2001, Administaff Companies II, L.P.

10133–GN– L.P. (Rev. 091901) CF

**13.10 Force Majeure.** Neither Administaff nor Client shall be required to perform any term, condition, or covenant of this Agreement so long as such performance is delayed or prevented by force majeure, which shall mean acts of God, strikes, lockouts, labor restrictions by any governmental authority, civil riot, floods, and any other cause not reasonably within the control of Administaff or Client and which by the exercise of due diligence Administaff or Client is unable, wholly or in part, to prevent or overcome.

**13.11 Authority.** Each party represents and warrants that each has actual authority and power to enter this Agreement and to be bound by the terms and conditions hereof.  Any individual signing this Agreement on behalf of a Client represents, warrants and guarantees that he or she has full authority to do so.  This Agreement is binding upon Administaff only if signed by the President or a Vice President of Administaff.

## XIV.  ATTACHMENTS

The following Schedules, Exhibits and Addendum are attached to this Agreement and incorporated herein by reference for all purposes:

A.  Schedule A ("Confidential Census");

B.  Schedule B ("Client Service Application");

C.  Exhibit C ("Employment Agreement");

D.  Exhibit D ("State Specific and/or Profession Specific Addendum") if any.

The following dates are established as the effective date for each item, provided the initial payroll is processed and the Administaff Invoice promptly paid by Client:

Effective date of the Agreement: _____3-1-02_____

First Date Staff considered on the Administaff payroll: _____3-1-02_____

First pay date is: _____3-15-02_____

This Agreement is executed by Administaff on __4__ day of __March  2002.__

ADMINISTAFF COMPANIES II, L.P.
By:  Administaff Companies, Inc., its General Partner
19001 Crescent Springs Drive
Kingwood, Texas  77339-3802
(800) 237-3170


BY: _____
Vice-President

This Agreement is executed by Client on _____ day of _____, _____.

FOR CLIENT:  Altour Services Inc.
(Company Legal Name)

BY: _____  President
        (Signature)                    Title or Position

Alexandre H. Chemla
(Name – Typed or Printed)


_____
Email Address (please print)

1270 Avenue of the Americas
15th Floor
New York, NY 10020

_____
Address

_____
Facsimile Number

Copyright 2001, Administaff Companies II, L.P.

10133–GN– L.P. (Rev. 091901) CF



# ADDENDUM

This Addendum is attached to and made a part of that certain Client Service Agreement (the "Agreement") of even date, between ADMINISTAFF COMPANIES II, L.P. ("Administaff"), a Delaware limited partnership, and ALTOUR SERVICES, INC. ("Client"). In the event of a conflict between this Addendum and the Agreement, this Addendum shall control.

ARTICLE VIII.   SERVICE FEE

Article VIII., paragraph 8.1 shall be amended to read as follows:

"8.1  The Administaff fee rate percentages set forth in Schedule B or as developed in paragraph 8.3 herein, are calculated utilizing the data submitted by the Client in Schedule A. If such information is inaccurate, Client shall immediately agree to amend Schedule A to reflect the current information."

Article VIII., paragraph 8.2 shall be amended to read as follows:

"8.2  The initial Schedule B will be signed by the parties and shall indicate that the fee to be charged by Administaff shall fluctuate each pay period as stated in paragraph 8.3 herein. Each pay period, Client shall pay Administaff the total service fee ("Total Service Fee") comprised of the actual gross payroll of Staff during such pay period plus the fee rate percentages specified in Schedule B multiplied by the actual gross payroll of Staff during such pay period. The Total Service Fee plus any other charges shall be reflected on the invoice."

Article VIII., paragraph 8.3 shall be amended to read as follows:

"8.3  (A) (i) Administaff may periodically review the total Schedule B payroll amount for those categories of Staff that have a set fee rate percentage reflected on Schedule B and/or (ii) a fluctuating fee rate charged by Administaff each pay period will be developed each pay period based on the actual rate of pay reported by the Client for each Staff. The percent charged will increase or decrease according to the rate of pay reported by Client; and (B) Changes to the fee percentages made necessary due to statutory changes which would have been applicable to Client absent this Agreement may be made at any time such changes are required by law."

DONE THIS 10 day of May , 2003 effective the same date as the Agreement.

ADMINISTAFF COMPANIES II, L.P.
By: Administaff Companies, Inc., its General Partner

By: Roger Leskun

Title: Vice President

ALTOUR SERVICES, INC.

By: _____

Title: President

(csa.add/Floating Pay Rate 2002/Altour Services, Inc./050802)





## CLIENT SERVICE AGREEMENT

THIS CLIENT SERVICE AGREEMENT (the "Agreement") is between Administaff Companies II, L.P., ("Administaff"), a Delaware corporation, with its principal place of business at 19001 Crescent Springs Drive, Kingwood, Texas 77339-3802, and Altour International Inc. - New York ("Client"). Administaff is a Professional Employer Organization, serving as an off-site, full service human resource department. Administaff personnel management services are delivered by entering into a co-employment relationship with Client's employees. This relationship and the sharing of responsibilities are defined in this Agreement.

### I. PERSONNEL

Administaff and Client agree that Administaff will provide personnel management services to Client and that Administaff and Client will be co-employers of the worksite employees assigned to Client's worksite ("Staff"), for the job functions listed in Schedule A ("Confidential Census"). Client warrants that information supplied to Administaff on the Confidential Census is accurate as supplied. Client agrees on an ongoing basis to amend Schedule A to reflect each change in pay rate, addition or deletion of Staff, or any change in their workers' compensation code within five (5) days of the effective date of such change or addition. If such information is inaccurate, Client shall promptly notify Administaff.

### II. TERM OF AGREEMENT

This Agreement shall commence on the date shown below and remain in force until either Administaff or Client terminates the Agreement by giving sixty (60) days prior written notice unless otherwise provided herein or as agreed to in writing by Client and Administaff.

### III. ADMINISTRATION

3.1   Administaff is responsible for the following:

    a.  reserving a right of direction and control over Staff, including a right to hire or terminate as to Administaff's employment relationship, maintain Staff records, and a right to resolve Staff disputes not subject to a collective bargaining agreement;

    b.  payment of salaries, wages, and compliance with applicable rules and regulations governing the reporting and payment of all federal and state taxes on payroll wages paid under this Agreement, including, but not limited to: (i) federal income tax withholding provisions of the Internal Revenue Code; (ii) provisions of state and/or local income tax withholding laws, if applicable; (iii) provisions of the Federal Insurance Contributions Act ("FICA"); (iv) provisions of the Federal Unemployment Tax Act ("FUTA"); and, (v) provisions of applicable state unemployment tax laws;

    c.  providing employee benefits through Administaff sponsored plans as indicated on Schedule B, if any are to be provided, compliance with the Consolidated Omnibus Budget Reconciliation Act ("COBRA") (excluding any state health or other benefit coverage continuation or conversion), Health Insurance Portability and Accountability Act ("HIPAA"), and Employee Retirement Income Security Act ("ERISA"), if applicable, as to plans sponsored by Administaff;

    d.  procurement of workers' compensation insurance and administration of claims;

    e.  development and implementation of policies and practices in conjunction with Client relating to personnel management services, including, but not limited to, enrolling, recruiting, interviewing, testing, selecting, training, evaluating, replacing, supervising, disciplining, reassigning, and terminating Staff; and

    f.  compliance with any applicable state statute or regulations governing a professional employer organization.

3.2   Client is responsible for the following:

    a.  the service provided or product produced by Client;

    b.  retaining a right of direction and control over Staff including a right to hire or terminate as to Client's employment relationship, as is necessary to conduct Client's business and without which Client would be unable to conduct its business, discharge any fiduciary responsibility that it may have, or comply with any applicable licensure, regulatory or statutory requirement of Client and/or Staff;

    c.  compliance with any professional licensing, fidelity bonding, and/or professional liability insurance requirements;

    d.  compliance with Occupational Safety and Health Administration ("OSHA") regulations, Environmental Protection Agency ("EPA") regulations, child labor laws, Worker Adjustment and Retraining Notification Act ("WARN"), Fair Labor Standards Act ("FLSA"), including Equal Pay Act, compliance with federal governmental contracting provisions, and any state and/or local equivalent of any of the foregoing; and any applicable state health or other benefit coverage continuation and conversion laws;

    e.  compliance with National Labor Relations Act ("NLRA") and liability for all obligations, including organizing efforts and process expenses, related to Client's collective bargaining agreement and any benefits arising from such agreement;

Copyright 2001, Administaff Companies II, L.P.

10133-GN- L.P. (Rev. 091901) CF

f.   the operation of Client's business, equipment or property, including motor vehicles;

g.   the payment, through Administaff, of commissions, bonuses, paid leaves of absence, and severance payments to Staff, if any;

h.   the payment of any non-qualified deferred compensation or equity based compensation of any type, including, but not limited to, stock options, restricted stock and phantom stock, the number and value of options granted, whether such payment is actual or imputed for taxing purposes, and compliance with any applicable rules and regulations governing such compensation;

i.   development and implementation of policies and practices to establish and maintain Client's intellectual property rights including but not limited to patents, trademarks, copyrights, trade secrets and confidential information and to prevent any infringement or unauthorized use of Client's intellectual property rights by any third party;

j.   development and implementation of policies and practices to avoid infringement or unauthorized use by Staff and/or Client of any intellectual property rights; and

k.   to the extent Client deems appropriate, entering into agreements with Staff concerning assignment of inventions and copyrights to Client and protection of Client's intellectual property rights.

3.3   Administaff and Client will be jointly responsible for compliance with all federal, state and local employment laws, including, but not limited to, Title VII of the 1964 Civil Rights Act, Age Discrimination in Employment Act ("ADEA"), Title I of the Americans with Disabilities Act ("ADA"), Family and Medical Leave Act ("FMLA"), Consumer Credit Protection Act, Title III, 42 U.S.C. §§ 1981, §§ 503 of the Rehabilitation Act of 1973, immigration laws and regulations, and any state and/or local equivalent of the foregoing, as well as any and all personnel management policies and procedures that are maintained by Administaff and referenced in 3.1 e.

## IV. SUPERVISION AND EMPLOYMENT AGREEMENT

4.1   One or more on-site supervisors shall be designated by Administaff from among Staff.  On-site supervisors shall be responsible for facilitating personnel management services provided by Administaff.

4.2   An employee listed on Schedule A, and any Staff added later, become co-employees of Administaff when (i)he/she becomes an employee of Client;  (ii) he/she executes an Administaff Employment Agreement as set forth in Exhibit C ("Employment Agreement"); and (iii) Client pays the first Administaff invoice covering such employee.

## V. WORK ENVIRONMENT

5.1   Client agrees that it will comply, at its sole cost and expense, with all applicable federal, state and local health and safety laws, regulations, ordinances, directives and rules relating to workplace, provide and ensure use of all personal protective equipment, and follow all directives concerning a safe work environment from Administaff's workers' compensation insurance carrier.

5.2   Client agrees to immediately report to Administaff all accidents and injuries involving Staff.

5.3   Administaff and Administaff's workers' compensation insurance carrier shall have the right to inspect Client's workplace, including, but not limited to, any job sites at which Staff work.  To the extent possible, such inspections shall be scheduled at mutually convenient times.

## VI. INSURANCE

6.1   Administaff shall, at its expense, keep in force at all times during this Agreement, workers' compensation insurance covering all Staff.  Client shall be named an alternate employer.  Upon written request by Client, Administaff shall request that its insurance carrier furnish a certificate of insurance verifying coverage.  The policy shall include a waiver of subrogation.

6.2  a.  Administaff shall provide coverage for Client under the Administaff Employment Practices Liability Insurance Policy, provided:

(i)    Client provides Administaff notice immediately but in no event more than three (3) days of its receipt of any charge, litigation, request for arbitration, or demand letter involving Staff, former Staff or an applicant;
(ii)   Client is not in default hereunder; and
(iii)  Client complies with the requirements set forth at paragraph 11.8 and 11.11 and 13.2 of this Agreement.

(b)   The Administaff EPLI policy provides for a $10,000 deductible, including attorneys' fees, to be paid by the Client with a maximum aggregate coverage limit of $1,000,000 for the Client.  Coverage includes reasonable and necessary attorneys' fees which attorneys will be selected by Administaff.  The policy will be excess coverage in the event Client maintains its own EPLI policy.  The notice specified above shall be sent by facsimile transmission to 281/348-3118 Attn: Human Resource Compliance with the original document following via overnight courier to the address shown in paragraph 13.8.

(c)   The EPLI coverage terminates with the termination of this Agreement.

(d)   This paragraph 6.2 is subject to the terms and conditions set forth in the policies.

Page 2

Copyright 2001, Administaff Companies II, L.P.                                                  10133–GN– L.P. (Rev. 091901) CF

6.3   Client warrants and represents to Administaff that it has in force at the effective date of this Agreement, and will maintain during this Agreement, the following insurance coverage and minimum limits.  Such coverage shall be provided at the Client's sole cost and expense and shall be provided by a state approved insurance company and rated by A M Best Company at A- or better.

 a.   General Liability.  Commercial General Liability in standard form on an "occurrence basis" covering Client's operations with minimum limits of:
 (1)  $2,000,000.00         General Aggregate
 (2)  $1,000,000.00         Products/Completed Operations Aggregate and/or Error and Omissions (Malpractice)
 (3)  $1,000,000.00         Personal and Advertising Injury
 (4)  $1,000,000.00         Each Occurrence.
 Additional coverage may be required for special operations.

 b.   Automobile Liability.  Comprehensive automobile liability insurance covering all owned, hired, and non-owned Client vehicles, with minimum limits of One Million and No/100 Dollars ($1,000,000) combined single limit per occurrence for Bodily Injury and Property Damage Liability. Client warrants that all persons operating Client's vehicles are duly licensed and covered under the Client's Automobile Liability insurance policy without exception.  Client agrees to furnish to Administaff a list of drivers upon request.  The policy shall be endorsed to include, at no additional cost to Administaff, Staff who shall be operating motor vehicles for Client.

6.4   Policy Requirements.  All Client insurance policies required herein shall provide for thirty (30) days written notice to Administaff prior to alteration, cancellation, non-renewal or material change by endorsement of the coverage.  All such insurance policies shall be endorsed to waive any and all rights of subrogation against Administaff and name Administaff as an additional insured, both at no additional cost or expense to Administaff. Each of the policies shall be primary insurance and not excess over or contributory with any other valid, existing and applicable insurance carried by Administaff.

6.5   Client shall submit certificates of insurance to Administaff signed by authorized representatives of insurance companies evidencing all insurance required pursuant to this Article VI within thirty (30) days of execution of this Agreement and at any renewal or replacement of such policies.

6.6   Waiver of Subrogation.  Each party to this Agreement hereby waives any claim in its favor against the other party by way of subrogation or otherwise, which arises during this Agreement, for any and all liability, loss or damage which is covered by policies of insurance required hereunder or covering property, to the extent that such liability, loss or damage is recovered under such policies of insurance.  Since the mutual waivers will preclude the assignment of any aforesaid claim by way of subrogation or otherwise to an insurance company or any other person, each party agrees to immediately give to each of its insurance carriers, written notice of the terms of said mutual waiver, and to have its insurance policies properly endorsed, if necessary, to prevent the invalidation of said insurance coverage by reason of said waiver.

## VII.  ENROLLMENT FEE

Client agrees to pay Administaff a non-refundable enrollment fee in the sum specified in the initial Schedule B ("Client Service Application")  This one time enrollment fee is due and payable at the time the initial Agreement is signed by Client.

## VIII.  SERVICE FEE

In exchange for the personnel management services provided by Administaff, Administaff and Client agree as follows:

8.1   The Administaff fee rate percentages set forth in Schedule B are calculated utilizing the data submitted by the Client in Schedule A  If such information is inaccurate, Client shall amend Schedule A to reflect the current information.

8.2   The initial Schedule B will be signed by the parties and shall set forth the fee to be charged by Administaff.  Each pay period, Client shall pay Administaff the total service fee ("Total Service Fee") comprised of the actual gross payroll of Staff during such pay period plus the fee rate percentages specified in Schedule B multiplied by the actual gross payroll of Staff during such pay period.  The Total Service Fee plus any other charges shall be reflected on the invoice.

8.3   Administaff may periodically review the total Schedule B payroll amount and may, upon written notice to Client, adjust its fee percentages to account for material changes, as determined by Administaff, in payroll amount either increasing or decreasing its fee rate, which change will be effective with the next invoice after the notice.  Changes to the fee percentages made necessary due to statutory changes which would have been applicable to Client absent this Agreement may be made at any time such changes are required by law.

8.4   Each payroll period, Client shall provide a written report to Administaff of all time worked by non-exempt Staff, days worked by exempt-salaried Staff, and commissioned Staff.  Client will accurately report FLSA classification of all Staff, pay rate and any overtime worked by non-exempt.

8.5   An invoice provided by this Agreement shall be due and payable by Client on its receipt.  Client shall use a method of payment approved in advance by Administaff.

Copyright 2001, Administaff Companies II, L.P.          10133–GN–L.P. (Rev. 091901) CF

8.6   Client shall reimburse Administaff for services not included in its service fee and requested by Client.   Administaff shall advise Client if requested services are an extra charge.

8.7  . Fee rate percent for Staff not listed on the initial Schedule A, shall be computed using the same pricing model ("Pricing Model") used to determine the fee on the initial Schedule B.   This Pricing Model shall be applied to the actual payroll of Staff not included on the initial Schedule A, benefits selections and applicable payroll taxes.   The Pricing Model will take into account the number of months remaining in the current Agreement year.   Each subsequent year Schedule A shall be updated to include all current Staff and shall become the new Schedule A for purposes of determining additions to Staff that are not on the schedule.

8.8   Administaff reserves the right to impose any terms of its credit policy.

8.9   Client will notify Administaff of any changes, errors or inaccuracies in any payroll, payroll report, Schedule A or Schedule B within ten (10) days of such error or change.

## IX. DEFAULT

9.1   Acts of default by Client are:

    a.    failure of Client to pay an invoice when due;

    b.    failure of Client to comply with any directive of Administaff, when such directive is promulgated or made necessary by: (i) a federal, state or local governmental law or regulation; (ii) an insurance carrier providing coverage to Administaff and/or its Staff; or (iii) specific circumstances which may affect the safety or violate the legal rights of Administaff or Staff;

    c.    direct payment of taxable wages by Client to Staff for services contemplated by this Agreement;

    d.    commission or omission of any act that usurps any material right or obligation of Administaff as a co-employer of Staff covered by this Agreement;

    e.    violation by Client of any material provision of this Agreement;

    f.    filing by or against Client for bankruptcy, reorganization or appointment of a receiver, supervisor, or liquidator over its assets or property, Client's failure to meet any of its financial covenants, or  Administaff's reasonable belief Client is insolvent;

    g.    failure to follow terms of Administaff's credit policy as stated in paragraph 8.8 after being given written notice of the failure and ten (10) days opportunity to cure,

    h.    failure to cooperate with Administaff in its fulfilling any of its obligations under this Agreement after being given notice of the failure to cooperate and ten (10) days opportunity to cure;

    i.    a material money judgment against Client which remains unsatisfied for more than thirty (30) days and has not been appealed; or

    j.    making any form of press release or announcement to the general public regarding this Agreement, without the prior express written consent of Administaff, publicizing Administaff or using its trade marks, and/or service marks, or otherwise disclosing to the general public that the parties have entered this Agreement or have a relationship.

9.2   In the event Administaff incurs any expenses, fines and/or liabilities as a result of an act of default by Client as set forth above, Client shall reimburse Administaff for all actual expenses, fines and/or liabilities, including, but not limited to, reasonable attorneys' fees, court costs and any related expenses.

9.3   Upon an act of default by Client,  Administaff shall have the option, in its sole and absolute discretion, of terminating this Agreement immediately in the case of a default under 9.1a, b, c, d, e, f, or j or after cure period provided in 9.1 g, h, and i by written facsimile transmission or any other method of communication to the address stated in paragraph 13.8.

## X. INDEMNITY

10.1  Administaff hereby agrees to indemnify, defend and hold Client harmless from and against any and all liability, expense (including cost of investigation, court costs and reasonable attorneys' fees) and claims for damage of any nature whatsoever, whether known or unknown and whether direct or indirect, as though expressly set forth and described herein which Client may incur, suffer, become liable for, or which may be asserted or claimed against Client as a result of Administaff failing to pay when due wages to Staff, federal, state and local payroll taxes, if any, and health insurance premiums for participating Staff or to secure workers' compensation insurance coverage for Staff after having its invoice paid by Client

10.2  Notwithstanding anything herein or in any other agreement or document to the contrary, Client expressly agrees that Administaff shall under no circumstances be liable for any special, incidental or consequential damages of any nature whatsoever arising under or relating to this Agreement.

Page 4

Copyright 2001, Administaff Companies II, L.P.                                                                                                10133–GN– L.P. (Rev. 091901) CF

10.3 Client hereby agrees to indemnify, defend and hold Administaff, Administaff, Inc. and all subsidiaries of or companies affiliated with Administaff, Inc., its and their current and/or former officers, directors, shareholders, employees and agents ("Administaff Indemnified Parties"), harmless from and against any and all liability, expense (including cost of investigation, court costs and reasonable attorneys' fees) and claims for damage of any nature whatsoever, whether known or unknown and whether direct or indirect, as though expressly set forth and described herein, which Administaff Indemnified Parties may incur, suffer, become liable for or which may be asserted or claimed against Administaff Indemnified Parties:

    a.  relating to any claims, incidents or causes of action that occurred prior to the effective date of this Agreement, regardless of whether the claims, incidents or causes of action were asserted prior to or after the effective date of this Agreement;

    b.  as a result of the failure of Client to follow the directives, procedures and policies of Administaff as they relate to Staff which includes, but is not limited to, claims arising from the acts or failures to act of the Client and/or its employees, agents, former employees or former agents in accordance with (i) applicable federal, state or local laws or (ii) the terms and conditions of this Agreement;

    c.  arising from the Client's actions toward the Staff, rights or terms and conditions of employment, whether based on contract, tort or statutory violation (including but not limited to violations under FLSA, OSHA or WARN) subject to coverage under EPLI coverage under 6.2 herein, if any;

    d.  arising from actions of Staff toward non-employees of Administaff whether based on contract, tort or statutory violation;

    e.  arising from any product produced and/or services provided by Client;

    f.  arising from operation by Client, Client's employees or Staff of any form or type of motor vehicle;

    g.  arising from employee or Staff unionization and/or provision of benefits to any Staff member covered by a collective bargaining agreement, any organizing activity or claims based on NLRA;

    h.  arising from any Client employment agreement or offer letter Client has with Staff, or any policy or plan Client has regarding paid time off or other payments plans such as vacation, sick leave, severance, bonus or commissions and nothing in this provision creates any such policy or plan;

    i.  arising from any infringement, alleged infringement, unauthorized use or alleged unauthorized use of any intellectual property rights, including but not limited to patents, trademarks, copyrights, trade secrets and confidential information, by Staff or Client and by any product or services provided by Client; and

    j.  as a result of the failure of Client to properly maintain and operate any separate employee benefit plan(s), including, but not limited to, a defined contribution or defined benefit pension plan or a welfare plan maintained by Client in accordance with all applicable federal and state laws and any accompanying regulatory guidance thereto, including, but not limited to, Client or Client's agents' failure with respect to such plan(s) to make timely deposits to the appropriate plan(s) in an amount equal to the Staff requested wage deferral, to perform proper discrimination and coverage testing, file required annual informational or event specific returns or reports with the appropriate regulatory agencies, and timely pay any applicable premiums or vendor fees.

10.4  The indemnities in this section shall be deemed to be contractual in nature and shall survive termination of this Agreement.

## XI.  REPRESENTATIONS, WARRANTIES, AND AGREEMENT

11.1  Client agrees not to engage in any conduct that is, or could be in any way, inconsistent with the policies and procedures of Administaff made known to Client or the fact that the Staff are the co-employees of Administaff and Client. Client further agrees that it will not engage in any conduct regarding the Staff that is expressly disapproved of by Administaff.

11.2  Client agrees that Administaff will have no responsibility or liability for any losses or claims that arise as a result of Staff's negligence, theft, embezzlement, or other unlawful or willful acts committed by Staff.

11.3  Client agrees to comply with all applicable Department of Transportation, Interstate Commerce Commission and Motor Carrier Act requirements and regulations if Client uses Staff to operate motor vehicles and agrees to indemnify, defend, and hold Administaff harmless from and against any liability, expense (including court costs and attorneys' fees) and claims relating to the non-compliance or violation. This obligation to indemnify Administaff shall survive termination of this Agreement.

11.4  Client agrees to provide Administaff with a copy of any notice, complaint or charge of a government agency and/or legal action concerning (i) Client's workplace; (ii) Client's compliance with any laws, rules, regulations or ordinances relating to the workplace; or, (iii) any Staff within three (3) days of receipt of such notice, complaint, charge or legal action via facsimile transmission to 281/348-3118 ATTN: Human Resource Compliance, with the original complaint sent overnight courier to the address shown in paragraph 13.8.

Copyright 2001, Administaff Companies II, L.P.                                                          10133-GN- L.P. (Rev. 091901) CF

11.5 Client agrees to notify Administaff in advance if it has executed a collective bargaining agreement, is in the process of negotiating a collective bargaining agreement, experiencing organizing activities, or has any employees represented by a union.

11.6 Client acknowledges that any and all employee benefit plans maintained by Administaff may be amended at any time at the sole discretion of Administaff modifying any provision thereof to the extent allowed by ERISA and the Internal Revenue Code. Such modifications include but are not limited to, increases or decreases of participant co-pays, deductibles, out of pocket maximums, covered services, employee contribution amounts and the like and such modifications shall not be restricted as a result of any provision(s) contained in a collective bargaining agreement entered into by Client.

11.7 In the event co-employer (Client) files a voluntary petition under Title 11 of the United States Code, or in the event that an involuntary petition is filed against co-employer (Client) under Title 11, all debts that the Client may owe to Administaff shall be considered "administrative expenses" within the meaning of 11 U.S.C. §§ 503 (b)(1)(A) and Administaff's claim or claims for such administrative expenses shall be entitled to the priority specified in 11 U.S.C. §§ 507 (a) (1). Client further agrees to use every effort and cooperate with actions which will so classify these claims as administrative.

11.8 Client agrees to cooperate fully with Administaff in any investigation including, but not limited to, the defense of any employment claim, involving Staff whether such investigation or claim is initiated by Staff, a government agency or by Administaff. Administaff will not provide a defense in those situations where Client has taken action against Staff or individual members without the prior consultation of Administaff or where Client has failed to follow Administaff's directives which are based on applicable laws, rules or regulations.

11.9 Client warrants and represents that all individuals it has represented to Administaff as Staff are: (i) its employees, and (ii) included in the personnel management services of Administaff including receiving wages and coverage under insurance and benefit plans.

11.10 Client warrants and represents to Administaff that, prior to entering into this Agreement, Client has informed Administaff of all compensation, pension and/or benefit plans that Client may currently provide, or has heretofore provided, for any owners, partners, shareholders, directors, officers, employees or agents of Client. Client acknowledges that if Client currently provides or has previously provided any pension or benefit plans to such individuals or their dependents, certain complex rules under ERISA and the Internal Revenue Code may apply to these plans, as well as to any plans maintained by Administaff, as a result of this Agreement. If Client currently maintains or has maintained any such plans, Client acknowledges that Administaff has advised Client to seek advice from a qualified professional regarding the effect of this Agreement on such plans.

11.11 Client warrants and represents to Administaff that prior to entering into the Agreement, it has not engaged to the best of its knowledge in any violations of federal, state or local laws or regulations regarding wage and hour, unfair labor practices or discrimination and that Client is current on the payment of all wages, payroll taxes, and workers' compensation assessments and penalties, if applicable.

11.12 Client acknowledges that at the time of termination of this Agreement, Administaff will send Staff employment termination notices terminating Administaff's relationship with Staff which does not affect the employment relationship Client has with Staff.

11.13 Upon termination of this Agreement, Client will assume sole responsibility and liability for all accumulated unpaid sick leave, paid time off, vacation or similar liabilities for Staff.

11.14 Client agrees to notify Administaff in advance if it owns or operates aircraft or watercraft, or has any foreign operations or expatriates.

11.15 Client warrants and represents that it has furnished to Administaff accurate information concerning the Client's ownership structure for purposes of determining 401(k) plan eligibility or participation level. Client must promptly notify Administaff of any changes in its ownership structure.

11.16 Client warrants it will not request Staff to perform any services outside that person's workers' compensation code or employee's ability or training if such service would expose the individual, Staff or other persons to personal harm or danger.

11.17 Client agrees that it will not during this Agreement and for a period of one (1) year following its termination, solicit or hire any corporate employee of Administaff or in any way induce an Administaff employee to terminate his/her employment. If Client does employ for itself, or for its benefit, any corporate employee of Administaff, it will pay within thirty (30) days of written notice from Administaff a recruiting fee equal to one hundred and fifty percent (150%), or the maximum allowed under state law, of the annualized salary of the employee. Annualized salary for this paragraph 11.17 shall include any signing bonus, salary and wages and any estimated commission which will/would be paid to the employee during his/her first twelve (12) months of employment with or for the benefit of Client.

11.18 Client understands that certain services will be provided by Administaff through the use of Administaff's affiliates' password-protected Internet service platform *Administaff Assistant*. These services now include or will in the future include payroll, benefits information, reporting to Client and Staff information, recruiting, and training. Administaff may communicate services or offerings or make certain information available to Staff or Client through bizzport or *Administaff Assistant*. *Administaff Assistant*, bizzport and any other Administaff website are governed by the Terms of Use and Privacy Policy contained on each website.

## XII. ARBITRATION

12.1 Except for unpaid invoices or any amount of money owed by Client to Administaff or by Administaff to Client, Administaff and Client agree and stipulate that all claims, disputes and other matters in question between Administaff and Client arising out of, or relating to this Agreement or the

Copyright 2001, Administaff Companies II, L.P.                    10133–GN~ L.P. (Rev. 091901) CF

breach thereof, will be decided by arbitration in accordance with the Federal Arbitration Act (9 U.S.C. §§ 10 and 11) and the Commercial Arbitration Rules of the American Arbitration Association subject to the limitations of this Article XII. This agreement to so arbitrate and any other agreement or consent to arbitrate entered into in accordance herewith as provided in this Article XII. will be specifically enforceable under the prevailing law of any court having jurisdiction.

12.2 Notice of the demand for arbitration will be filed in writing with the other party to the Agreement and with the American Arbitration Association. The demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, and in no event shall any such demand be made after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations.

12.3 No arbitration arising out of, or relating to, this Agreement shall include by consolidation, joinder or in any other manner any other person or entity who is not a party to this contract unless:

    a.    the inclusion of such other person or entity is necessary if complete relief is to be afforded among those who are already parties to the arbitration, and/or such other person or entity is substantially involved in a question of law or fact which is common to those who are already parties to the arbitration and which will arise in such proceedings; and,

    b.    the written consents of the other person or entity sought to be included and Administaff and Client have been obtained for such inclusion, which consent shall make specific reference to this paragraph 12.3; but no such consent shall constitute consent to arbitration of any dispute not specifically described in such consent or to arbitration with any party not specifically identified in such consent.

12.4 The award rendered by the arbitrators will be final, judgment may be entered upon it in any court having jurisdiction thereof, and will not be subject to modification or appeal except to the extent permitted by §§ 10 and 11 of the Federal Arbitration Act (9 U.S.C. §§ 10 and 11).

## XIII. MISCELLANEOUS

13.1 This Agreement is between Administaff and Client and creates no individual rights of Staff or any third parties (except as stated in Article X.), as against Client or Administaff.

13.2 Client agrees to comply, at its sole cost and expense, with any applicable specific directives promulgated by: (i) a federal, state or local governmental body, department or agency and/or (ii) an insurance carrier providing coverage to Administaff and/or Staff affecting this Agreement.

13.3 Client shall not assign this Agreement or its rights and duties hereunder, or any interest herein, without the prior written consent of Administaff, which consent will not be unreasonably withheld.

13.4 The prevailing party, in any enforcement action arising with respect to this Agreement, shall be entitled to recover from the other party all costs of such enforcement action including, without limitation, reasonable attorneys' fees, court costs and related expenses.

13.5 EXCEPT FOR ARTICLE XIII. OF THIS AGREEMENT, WHICH SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT (9 U.S.C. §§ 10 AND 11), THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS WITHOUT REFERENCE TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF.

13.6 This instrument, including the initial Schedules and Exhibits attached hereto, contains the entire Agreement of the parties and supersedes all prior and contemporaneous agreements or understandings, whether written or oral, with respect to the subject matter hereof. No amendment or modification to this Agreement, other than subsequent Schedule B, shall be valid unless in writing and signed by both parties hereto. This Agreement is binding on the parties as of the last date it is signed by the parties if the execution dates are different.

13.7 If any provision of this Agreement, or any amendment thereof, is determined by a court of competent jurisdiction to be invalid the remaining provision shall remain in effect and be so construed as to effectuate the intent and purposes of this Agreement and any amendments thereto

13.8 All notices, requests and communications provided hereunder and required by Client shall be in writing, sent by facsimile, or hand-delivered, or mailed by prepaid United States registered, certified, or express mail, return receipt requested, or overnight courier service and addressed to the party's principal place of business as set forth in this Agreement (or to such other address provided in writing by such party).

    If to Administaff:

    Administaff Companies II, L.P.
    19001 Crescent Springs Drive
    Kingwood, Texas 7339-3802
    Attn: John H. Spurgin, II
    Fax: (281) 358-6492

13.9 The waiver by either party hereto of a breach of any term or provision of this Agreement shall not operate or be construed as a waiver of a subsequent breach of the same provision or of a breach of any other term or provision of this Agreement by any party.

Copyright 2001, Administaff Companies II, L.P.    10133–GN– L.P. (Rev. 091901) CF

13.10 Force Majeure. Neither Administaff nor Client shall be required to perform any term, condition, or covenant of this Agreement so long as such performance is delayed or prevented by force majeure, which shall mean acts of God, strikes, lockouts, labor restrictions by any governmental authority, civil riot, floods, and any other cause not reasonably within the control of Administaff or Client and which by the exercise of due diligence Administaff or Client is unable, wholly or in part, to prevent or overcome.

13.11 Authority. Each party represents and warrants that each has actual authority and power to enter this Agreement and to be bound by the terms and conditions hereof. Any individual signing this Agreement on behalf of a Client represents, warrants and guarantees that he or she has full authority to do so. This Agreement is binding upon Administaff only if signed by the President or a Vice President of Administaff.

## XIV. ATTACHMENTS

The following Schedules, Exhibits and Addendum are attached to this Agreement and incorporated herein by reference for all purposes.

A.   Schedule A ("Confidential Census");

C.   Exhibit C ("Employment Agreement");

B.   Schedule B ("Client Service Application");

D.   Exhibit D ("State Specific and/or Profession Specific Addendum") if any

The following dates are established as the effective date for each item, provided the initial payroll is processed and the Administaff Invoice promptly paid by Client:

Effective date of the Agreement: _____.

First Date Staff considered on the Administaff payroll: _____.

First pay date is: _____.

This Agreement is executed by Administaff on _____ day

of _____, _____.

This Agreement is executed by Client on _____ day

of _____, _____.

ADMINISTAFF COMPANIES II, L.P.
By:  Administaff Companies, Inc., its General Partner
19001 Crescent Springs Drive
Kingwood, Texas  77339-3802
(800) 237-3170

FOR CLIENT:  Altour International Inc. - New York
(Company Legal Name)

BY: _____
        Vice-President

BY: _____          President
              (Signature)                                    Title or Position

Alexandre H. Chevila
(Name - Typed or Printed)

_____
Email Address (please print)

1270 Ave of the America
15th Floor
New York, NY 10020

_____
Address

_____
Facsimile Number

Copyright 2001, Administaff Companies II, L.P.

10133–GN– L.P. (Rev. 091901) CF



08/29/2005  18:14  2   661-0989                    EBG                                PAGE  01/12



**EPSTEIN BECKER & GREEN, P.C.**

ATTORNEYS AT LAW

250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
TEL: 212.351.4500
FAX: 212.661.0989

EPSTEIN BECKER & GREEN PC

**FACSIMILE COVER SHEET**

DIRECT 212.351.4812    DIRECT FAX: 212.878.8612

---

## PRIVILEGED AND CONFIDENTIAL

| To. | Fax Number: | Telephone Number |
|---|---|---|
| **Michael Brown, Esq.** | **(281) 358-6492** | **(281) 348-3257** |

| From: | Traycee Ellen Klein | Atty. No. | 897 | Pages (including cover). | 12 |
|---|---|---|---|---|---|
| Date | August 29, 2005 | Client No.. | 50085.001 | | |

Comments:

### NOTICE OF PRIVILEGE AND CONFIDENTIALITY

THIS TELECOPY IS PRIVILEGED AND CONFIDENTIAL. IT IS INTENDED SOLELY FOR THE ADDRESSEE. ANY UNAUTHORIZED DISCLOSURE, REPRODUCTION, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS PROHIBITED. IF YOU RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY US IMMEDIATELY.

*IF YOU DO NOT RECEIVE ALL PAGES OR HAVE ANY PROBLEMS IN RECEIVING THIS TELECOPY,*
*PLEASE CALL THE SENDER IMMEDIATELY.*

ATLANTA • CHICAGO • DALLAS • HOUSTON • LOS ANGELES • MIAMI
NEWARK • NEW YORK • SAN FRANCISCO • STAMFORD • WASHINGTON, DC
EPSTEIN BECKER GREEN WICKLIFF & HALL, P.C. IN TEXAS ONLY.

NY:704355v1

08/29/2005   18:14   2  661-0989                EBG                          PAGE  02/12

# EPSTEIN BECKER & GREEN, P.C.

ATTORNEYS AT LAW
250 PARK AVENUE
NEW YORK, NEW YORK 10177-1211
212 351.4500
FAX: 212 661.0989
EBGLAW.COM

TRAYCEE ELLEN KLEIN
TEL. 212 351 4812
FAX: 212 878.8612
TKLEIN@EBGLAW.COM

August 29, 2005

**VIA FACSIMILE (281) 358-6492**

Michael Brown, Esq.
Administaff
Assistant General Counsel
19001 Crescent Springs Drive
Kingwood, TX 77339-3802

Re:  New York State Department of Labor

> Dear Mr. Brown

As you know from our earlier communications, we represent Altour International, Inc.
and Altour Service Inc. (hereinafter referred to as "Altour").  Faxed herewith is a copy of a
Notice and Order to Comply that was issued by the Commissioner of Labor on August 22, 2005
finding wages due and owing, interest and a civil penalty in the amount of $557,565.59.  As you
know from our March 18, 2005 correspondence, it is Altour's position that Administaff is liable
for this money, as well as Altour's costs, legal fees and other damages.

In accordance with Section 101, of the New York Labor Law, aggrieved parties have
sixty days to file a petition with the Industrial Board of Appeals.  We again take this opportunity
to invite Administaff to participate in the planning, strategy, and defense of this matter  If we do
not hear from you within the next 48 hours advising us that Administaff will voluntarily be
participating in this matter, and fulfilling its obligations under the Client Service Agreement,
Altour will be left with no alternative other than to commence legal action against Administaff.
We hope that this will not be necessary

Very truly yours,

Traycee Ellen Klein

TEK gg
Enclosures
cc   Stephen Cochell, Esq.

ATLANTA · CHICAGO · DALLAS · HOUSTON · LOS ANGELES · MIAMI
NEWARK · NEW YORK · SAN FRANCISCO · STAMFORD · WASHINGTON, D.C.

NY 698903v1         EPSTEIN BECKER GREEN WICKLIFF & HALL  P.C  IN TEXAS ONLY

08/29/2005  18:14    2   561-0989          EBG                                    PAGE  03/12

George E  Pataki, Governor                      Linda Angello, Commissioner

**Workforce New York**
*Put us to work for you*

**Date: 08/22/05**

ATTN ALEXANDER CHEMLA CEO
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

**Refer to:  01-05-09**

### NOTICE

The attached Order(s) to Comply list(s) wages due and owing, interest assessed to the date of the Order, and any civil penalty assessed.

The law requires interest to accrue until payment is received; however, satisfactory compliance with this Order will be met if the total amount due including interest and any civil penalty is paid within 10 days of the receipt of the Order(s).  Your check or money order for the total amount including interest and any civil penalty should be made payable to the "Commissioner of Labor" and submitted in the self-addressed envelope enclosed.

If you have any questions regarding the attached Order(s), please contact Supervising Investigator, New York State Department of Labor, Division of Labor Standards, Interest, Penalty & Collection Section, Room 185B, Building #12, Governor W. Averell Harriman State Office Building Campus, Albany, New York 12240.

Connie J. Varcasia, Deputy Commissioner of Labor
For the Commissioner of Labor

BY: _____

Richard Cucolo, Director
Division of Labor Standards

Attachment



Phone  (518) 485-8579     Fax  (518) 457-8452
W  Averell Harriman State Office Campus, Division of Labor Standards, Bldg  12, Room 185B  Albany, NY 12240

www labor state ny us

08/29/2005  18:14   2   661-0989          EBG                              PAGE  04/12

George E. Pataki, Governor



**Workforce**
**New York**
Put us to work for you

Linda Angello, Commissioner

Date: 08/22/05

## ORDER TO COMPLY WITH ARTICLE 6
## OF THE NEW YORK STATE LABOR LAW

ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| | |
|---|---|
| Tips due & owing: | $ 259,349.84 |
| Interest at 16%: | $  38,866.75 |
| Civil Penalty: | $ 259,349.00 |
| Total Due: | $ 557,565.59 |

Upon investigation the Commissioner of Labor FINDS:

A.   At all times mentioned in this Order the above named was an Employer as defined in Section 190.3 of the New York State Labor Law and conducted business at the above address.

B    Said Employer employed the person(s) named on the attached Schedule of Tip Appropriations for the periods set forth therein, in occupations which were subject to the provisions of Section 196 of the New York State Labor Law.

C    Said Employer failed to pay the wages earned or payable for the periods designated in the attached schedule at the time that payment was required by law.

D    There is due and owing by the Employer to the said employee(s) the sum as indicated above for the unpaid wages.

E.   There is also due and owing by the Employer to the said employee(s) interest at the above rate to the above date in the sum indicated above, which shall continue to accrue at the said rate until the aforesaid wages are paid.

F    There is due and owing by the Employer to the Commissioner of Labor a civil penalty in the above amount.  In determining the penalty the following have been given due consideration.  the size of the employer's business, the good faith of the employer, the gravity of the violation, the history of previous violations and the failure to comply with record keeping or other non-wage requirements as revealed by an investigation conducted by the Division of Labor Standards.

Phone  (518) 485-6579     Fax  (518) 457-8452
W. Averell Harriman State Office Campus, Division of Labor Standards, Bldg  12, Room 185B  Albany  NY 12240

www.labor.state.ny.us

08/29/2005  18:14   2__-__61-0989          EBG                              PAGE  05/12

Page 2

THEREFORE  IT  IS  ORDERED  that the employer comply with the provisions of the
Labor Law by remitting to the Commissioner of Labor the total sum as indicated above,
for wages due plus interest and penalty, to be disbursed according to law, and it is
further

ORDERED  that, in the event that the wages due, interest thereon and the civil penalty
assessed are not paid within 60 days following the service of a certified copy of this
Order upon the employer, and no petition has been filed by the employer with the
Industrial Board of Appeals for review of this determination, said Order may be filed with
the County Clerk where the employer resides or has a place of business, and the Clerk
shall without further notice enter judgment pursuant to Section 218 and Section 219 of
the New York State Labor Law in the total amount indicated above with the stated rate
of interest from the date hereof until payment.

                              Connie J. Varcasia, Deputy Commissioner of Labor
                              For the Commissioner of Labor


                    BY: _____
                              Richard Cucolo, Director
                              Division of Labor Standards

If you are aggrieved by this Order, you may appeal within 60 days from the date issued
to the Industrial Board of Appeals as provided by Section 101 of the Labor Law.  Your
appeal should be addressed to the Industrial Board of Appeals, Empire State Plaza,
Agency Building #2, 20th Floor, Albany, NY  12223, as prescribed by its Rules of
Procedure, a copy of which may be obtained from the Board upon request.

Checks and money orders should be made payable to the Commissioner of Labor and
sent to the New York State Department of Labor, Division of Labor Standards,
Monetary Services Section, Room 185B, Building 12, The Gov. Averell Harriman State
Office Building Campus, Albany, NY 12240


*I hereby certify that this is a true and accurate copy of the original Order to Comply on
file with the New York State Department of Labor, Division of Labor Standards, Albany,
New York 12240.*

Certified this 22ND  day of August, 2005          _____
                                                        Assistant Director, Labor Standards

STATE OF NEW YORK
DEPARTMENT OF LABOR
DIVISION OF LABOR STANDARDS

DATE OF ORDER
08/22/05
SECTION OF LAW
196-d
PAGE 01

### SCHEDULE OF UNPAID TIP APPROPRIATIONS

**NAME OF EMPLOYER AND ADDRESS OF PLACE OF EMPLOYMENT**
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| NAME, ADDRESS, SS#, & ID# OF EMPLOYEE | OCCUPATIONAL CLASSIFICATION | PERIOD COVERING | | TOTAL DUE |
|---|---|---|---|---|
| | | FROM | TO | |
| ELATTAB, SAID 33-26 92ND ST APT 6N JACKSON HEIGHTS NY 11372 XXX-XX-7248 0105007410101 | DRIVER | 11/22/02 | 12/28/04 | $8,758.50 |
| LEWIS, EDGAR 25 CHESWOLD BLVD #3C NEWARK DE        19713 XXX-XX-4376 0105007410102 | DRIVER | 05/01/99 | 12/12/02 | $7,315.32 |
| WITHERSPOON, KEVIN 468 SUTTON AVE HACKENSACK NJ        07601 XXX-XX-1720 0105007410103 | DRIVER | 11/22/02 | 11/30/04 | $13,806.35 |
| GAMEIL, OMER 4705 MEADOWVIEW AVE N BERGEN NJ        07047 XXX-XX-1672 0105007410104 | DRIVER | 11/22/02 | 11/08/04 | $11,827.10 |

Phone. (518) 485-6579     Fax  (518) 457-8452
W  Averell Harriman State Office Campus, Division of Labor Standards, Bldg  12, Room 185B, Albany, NY 12240

www.labor.state.ny.us

08/29/2005  18:14    2  661-0989              EBG                                  PAGE  07/12

STATE OF NEW YORK
DEPARTMENT OF LABOR
DIVISION OF LABOR STANDARDS

DATE OF ORDER
08/22/05
SECTION OF LAW
196-d
PAGE 02

## SCHEDULE OF UNPAID TIP APPROPRIATIONS

### NAME OF EMPLOYER AND ADDRESS OF PLACE OF EMPLOYMENT
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| NAME, ADDRESS, SS#, & ID# OF EMPLOYEE | OCCUPATIONAL CLASSIFICATION | PERIOD COVERING | | TOTAL DUE |
|---|---|---|---|---|
| | | FROM | TO | |
| MONZON, FREDY 61 ACORN LN LEVITTOWN NY 11756 XXX-XX-9047 0105007410105 | DRIVER | 11/22/02 - | 11/30/04 | $6,558.45 |
| FOLOKY, ROBERT 37-17 34TH AVE #10 LONG ISLAND CITY NY 11101 XXX-XX-6148 0105007410106 | DRIVER | 11/22/02 - | 11/26/04 | $3,954 05 |
| ENESCU, DANIEL 47-20 40TH ST #3K SUNNYSIDE NY 11104 XXX-XX-1916 0105007410107 | DRIVER | 11/22/02 - | 04/30/04 | $7,344 00 |
| PLAYER, TERRY 212 BARD AVE STATEN ISLAND NY 10310 XXX-XX-5573 0105007410108 | DRIVER | 11/22/02 - | 11/30/04 | $25,806.20 |

Phone. (518) 485-6579    Fax.  (518) 457-8452
W. Averell Harriman State Office Campus, Division of Labor Standards, Bldg. 12, Room 185B, Albany, NY 12240

www labor state ny us

STATE OF NEW YORK
DEPARTMENT OF LABOR
DIVISION OF LABOR STANDARDS

DATE OF ORDER
08/22/05
SECTION OF LAW
196-d
PAGE 03

**SCHEDULE OF UNPAID TIP APPROPRIATIONS**

**NAME OF EMPLOYER AND ADDRESS OF PLACE OF EMPLOYMENT**
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| NAME, ADDRESS, SS#, & ID# OF EMPLOYEE | OCCUPATIONAL CLASSIFICATION | PERIOD COVERING FROM | TO | TOTAL DUE |
|---|---|---|---|---|
| GODZHIK, KONSTANTIN 2250 83RD ST #3H BROOKLYN NY       11214 XXX-XX-0506 0105007410109 | DRIVER | 11/22/02 | - 02/28/03 | $4,373.50 |
| OUARDA, NOUREDDINE 6922 5TH AVE 3RD FL BROOKLYN NY       11209 XXX-XX-8530 0105007410110 | DRIVER | 11/22/02 | - 11/28/04 | $27,531.20 |
| RIVADENEIRA, JOSE 4902 21ST ST LONG ISLAND CITY NY  11101 XXX-XX-2384 0105007410111 | DRIVER | 11/22/02 | - 11/28/04 | $15,314.95 |
| BIGIRIMAMA, ALEXIS 272 WINFIELD AVE JERSEY CITY NJ       07305 XXX-XX-6964 0105007410112 | DRIVER | 01/12/03 | - 11/30/04 | $23,670.95 |

Phone: (518) 485-6579    Fax: (518) 457-8452
W. Averell Hamman State Office Campus, Division of Labor Standards, Bldg. 12  Room 185B, Albany, NY 12240

www.labor.state.ny.us

STATE OF NEW YORK
DEPARTMENT OF LABOR
DIVISION OF LABOR STANDARDS

DATE OF ORDER
08/22/05
SECTION OF LAW
196-d
PAGE 04

**SCHEDULE OF UNPAID TIP APPROPRIATIONS**

**NAME OF EMPLOYER AND ADDRESS OF PLACE OF EMPLOYMENT**
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| NAME, ADDRESS, SS#, & ID# OF EMPLOYEE | OCCUPATIONAL CLASSIFICATION | PERIOD COVERING | | TOTAL DUE |
|---|---|---|---|---|
| | | FROM | TO | |
| ASSEFA, SAMUEL 9604 57TH AVE #17M CORONA NY 11368 XXX-XX-8603 0105007410113 | DRIVER | 11/22/02 - | 11/30/04 | $164.00 |
| JOUEJATI, AYMAN 210 HAASE AVE PARAMUS NJ 07652 XXX-XX-9390 0105007410114 | DRIVER | 08/07/03 - | 11/30/04 | $24,261.85 |
| KAMNAKSH, MOHAMMED 1413 28TH ST #1 NORTH BERGEN NJ 07047 XXX-XX-2684 0105007410115 | DRIVER | 10/03/03 - | 06/06/04 | $9,930.80 |
| SANCHEZ, WILLIAM 200-10 35TH AVE #223 BAYSIDE NY 11361 XXX-XX-5713 0105007410116 | DRIVER | 12/05/03 - | 11/27/04 | $2,593.50 |

Phone: (518) 485-8578    Fax: (518) 457-8452
W Averell Harriman State Office Campus, Division of Labor Standards, Bldg. 12, Room 185B, Albany, NY 12240

www.labor.state.ny.us

STATE OF NEW YORK
DEPARTMENT OF LABOR
DIVISION OF LABOR STANDARDS

DATE OF ORDER
08/22/05
SECTION OF LAW
196-d
PAGE 05

## SCHEDULE OF UNPAID TIP APPROPRIATIONS

**NAME OF EMPLOYER AND ADDRESS OF PLACE OF EMPLOYMENT**
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| NAME, ADDRESS, SS#, & ID# OF EMPLOYEE | OCCUPATIONAL CLASSIFICATION | PERIOD COVERING | | TOTAL DUE |
|---|---|---|---|---|
| | | FROM | TO | |
| REID, DARRYL<br>3432 CRESCENT ST #1<br>ASTORIA NY        11106<br>XXX-XX-4768<br>0105007410117 | DRIVER | 02/10/04 | 11/15/04 | $10,482.50 |
| RODRIGUEZ, JESUS<br>13-27 E 94TH ST<br>BROOKLYN NY        11236<br>XXX-XX-0900<br>0105007410118 | DRIVER | 02/16/04 | 11/30/04 | $5,473.31 |
| GARCIA, ISIDORO<br>149 CORNFLOWER RD<br>LEVITTOWN NY        11756<br>XXX-XX-7880<br>0105007410119 | DRIVER | 04/23/04 | 09/13/04 | $2,230 05 |
| GABRIEL, GENNA<br>45-54 39TH PL # 2B<br>SUNNYSIDE NY        11104<br>XXX-XX-8132<br>0105007410120 | DRIVER | 04/30/04 | 11/30/04 | $5,847 35 |

Phone. (518) 485-6579     Fax  (518) 457-8452
W. Averell Harriman State Office Campus, Division of Labor Standards  Bldg. 12, Room 185B, Albany, NY 12240

www.labor.state.ny.us

STATE OF NEW YORK                           DATE OF ORDER
DEPARTMENT OF LABOR                            08/22/05
DIVISION OF LABOR STANDARDS                 SECTION OF LAW
                                                196-d
                                                PAGE 06

**SCHEDULE OF UNPAID TIP APPROPRIATIONS**

**NAME OF EMPLOYER AND ADDRESS OF PLACE OF EMPLOYMENT**
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| NAME, ADDRESS, SS#, & ID# OF EMPLOYEE | OCCUPATIONAL CLASSIFICATION | PERIOD COVERING | | TOTAL DUE |
|---|---|---|---|---|
| | | FROM | TO | |
| SUTHERLAND, PATRICK 137-77 45TH AVE #3D FLUSHING NY          11355 XXX-XX-2810 0105007410121 | DRIVER | 07/01/04 | - 11/30/04 | $2,188.65 |
| BURRUS, WILLIAM 469 DURYEA AVE UNIONDALE NY          11553 XXX-XX-3705 0105007410122 | DRIVER | 09/09/04 | - 11/14/04 | $417.75 |
| VILLAFANE, JUAN 20 DAHILL RD #1S BROOKLYN NY          11218 XXX-XX-9106 0105007410123 | DRIVER | 07/05/04 | - 12/30/04 | $2,936.25 |
| RIVERA, EDWIN 196-27 56TH AVE FRESH MEADOWS NY   11365 XXX-XX-2749 0105007410124 | DRIVER | 09/28/04 | - 11/30/04 | $2,890.45 |

Phone  (518) 485-6579     Fax  (518) 457-8452
W. Averell Harriman State Office Campus, Division of Labor Standards, Bldg. 12  Room 185B, Albany, NY 12240

www.labor.state.ny.us

08/29/2005 18:14 2  61-0989                    EBG                          PAGE 12/12

| STATE OF NEW YORK | DATE OF ORDER |
|---|---|
| DEPARTMENT OF LABOR | 08/22/05 |
| DIVISION OF LABOR STANDARDS | SECTION OF LAW |
|  | 196-d |
|  | PAGE 07 |

## SCHEDULE OF UNPAID TIP APPROPRIATIONS

**NAME OF EMPLOYER AND ADDRESS OF PLACE OF EMPLOYMENT**
ALTOUR SERVICE INC
1270 AVENUE OF AMERICAS
NEW YORK NY 10020

| NAME, ADDRESS, SS#, & ID# OF EMPLOYEE | OCCUPATIONAL CLASSIFICATION | PERIOD COVERING | | TOTAL DUE |
|---|---|---|---|---|
|  |  | FROM | TO |  |
| HULEN, RAYMOND 930 GRAND CONCOURSE 6E BRONX NY        10451 XXX-XX-2986 0105007410125 | DRIVER | 12/08/00 | - 04/01/04 | $33,672 81 |

**TOTAL**                                                              **$259,349.84**

Phone. (518) 485-6579    Fax  (518) 457-8452
W  Averell Hamman State Office Campus, Division of Labor Standards, Bldg. 12, Room 185B, Albany, NY 12240

www.labor.state.ny.us